IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**FILED**

JUL 1 2 2010

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

| | |
|---|---|
| DOUGLAS L. JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WEST VIRGINIA UNIVERSITY | ) |
| HOSPITALS, INC., WEST VIRGINIA | ) |
| UNIVERSITY MEDICAL CORPORATION | ) |
| d/b/a/ UNIVERSITY HEALTH ASSOCIATES, | ) |
| WEST VIRGINIA UNIVERSITY BOARD | ) |
| OF GOVERNORS for and on behalf of | ) |
| WEST VIRGINIA UNIVERSITY and | ) |
| WEST VIRGINIA UNIVERSITY SCHOOL | ) |
| OF MEDICINE, | ) |
| | ) |
| Defendants. | ) |

Civil Action No. *1:10 cv 107*

JURY TRIAL DEMANDED

*ELECTRONICALLY FILED*

## COMPLAINT

AND NOW, comes plaintiff, Douglas L. Jackson, by his attorneys, the Law Office of Travis R. Fitzwater and Friedman and Friedman, and files the following Complaint against defendants West Virginia University Hospitals, Inc., West Virginia University Medical Corporation d/b/a University Health Associates, West Virginia University Board of Governors for and on behalf of West Virginia University and West Virginia University School of Medicine.

## PARTIES

1. Plaintiff Douglas L. Jackson ('Jackson") is an adult residing at 3951 Palisades Drive, Weirton, West Virginia, 26062.

2. Defendant West Virginia University Hospitals, Inc.("WVUH") was created pursuant to

West Virginia Code §18-11C-1, *et seq.* and is organized as a nonstock, not-for-profit corporation under the laws of the State of West Virginia with its principal place of business located at 1 Medical Center Drive, Morgantown, West Virginia, 26506.

3.   Defendant West Virginia University Medical Corporation d/b/a University Health Associates ("WVUMC-UHA") is organized as a not-for-profit corporation under the laws of the State of West Virginia with its principal place of business located at 2244 Health Sciences Center, Morgantown, West Virginia, 26505.

4.   Defendant West Virginia University Board of Governors for and on behalf of West Virginia University ("WVU") is a public education institution located in Morgantown, West Virginia, 26506.

5.   Defendant West Virginia University School of Medicine ("WVUSOM") is an accredited medical school situated on the campus of defendant WVU which offers a curriculum for the education of health care professionals, provides patient care and conducts scientific, clinical and public health research.

## JURISDICTION AND VENUE

6.   This action is brought to remedy discrimination on the basis of sex in violation of Title VII of the Civil Rights of 1964, 42 U.S.C. §2000e, *et seq.*, as amended (hereinafter referred to as Title VII), to secure full restitution of all lost wages and benefits resulting from the defendants' violation of Sections 2000e-2(a)(1) and (2) of Title VII, as amended, and for such other and further relief as may be appropriate. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343(3) and (4) and 42 U.S.C. §2000e-5(f)(3).

7.  Supplemental jurisdiction pursuant to 28 U.S.C. §1367 is sought to remedy discrimination on the basis of sex in violation of the West Virginia Human Rights Act ("WVHRA"), W. Va. Code §5-11-1, *et seq.*

8.  Damages, attorneys fees, costs, punitive damages and other appropriate legal and equitable relief are sought pursuant to 42 U.S.C. §2000e-5(g) and (k), 42 U.S.C. §1981a(a) and W. Va. Code §5-11-13.

9.  As the unlawful practices complained of herein occurred within Monongalia County, West Virginia, venue is proper in this district pursuant to 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5(f)(3).

## STATUTORY PREREQUISITES

10.  On or about January 13, 2009, plaintiff Douglas Jackson ("Jackson") filed a charge of sex discrimination against defendant WVUH with the Equal Employment Opportunity Commission ("EEOC").  Said filing constituted an initiation of proceedings with the West Virginia Human Relations Commission ("WVHRC") pursuant to and by operation of the Worksharing Agreement between the EEOC and WVHRC.

11.  On or about February 12, 2009, plaintiff Jackson filed an amended charge of discrimination against defendant WVUH and defendants WVUMC-UHA, WVU and WVUSOM.

12.  Plaintiff Jackson requested from the EEOC and was issued Notices of Right to Sue for defendants WVUH and WVUMC-UHA, which were received on April 29, 2010.  Copies of said Notices of Right to Sue are attached hereto collectively as Exhibit "1."

13.  Since defendants WVU and WVUSOM are public employers, plaintiff Jackson's request

for a Notice of Right to Sue as to these defendants was forwarded by the EEOC to the U.S. Department of Justice. Plaintiff Jackson received said Notices of Right to Sue from the U.S. Department of Justice on May 24, 2010. Copies of said Notices of Right to Sue are attached hereto collectively as Exhibit "2."

14. On or about April 28, 2010, plaintiff Jackson provided defendants WVUH, WVUMC-UHA, WVU and WVUSOM and the West Virginia Attorney General each with written notice of the claims asserted and the relief requested herein pursuant to W. Va. Code §55-17-3. Copies of said notices are attached hereto collectively as Exhibit "3."

15. Plaintiff Jackson has complied with all conditions precedent to filing this Complaint.


**FACTS**

16. At all times relevant hereto, defendants WVUH, WVUMC-UHA, WVU and WVUSOM were each an employer within the meaning of Title VII and the WVHRA because each was engaged in industries affecting interstate commerce and employed fifteen or more employees.

17. Defendants WVUH, WVUMC-UHA, WVU and WVUSOM each exercised substantial control over the essential terms, conditions and privileges of plaintiff Jackson's employment as a certified registered nurse anesthetist ("CRNA") providing anesthesia services in the Surgical Services/Anesthesiology Department located in Ruby Memorial Hospital in Morgantown, West Virginia, including but not limited to, his hiring, the means and manner of his work performance, the frequency, length and location of his work and his termination.

**Defendants WVUH, WVUMC-UHA and WVUSOM are closely interrelated and share control of the Surgical Services/Anesthesiology Department of Ruby Memorial Hospital.**

-4-

18.  The operations of defendants WVUH, WVUMC-UHA and WVUSOM are integrated into a single system for delivery of clinical medical care to the public.

19.  Pursuant to statute enacted by the West Virginia Legislature, defendant WVUH is responsible for operating Ruby Memorial Hospital which offers a full range of clinical medical services to the public including, *inter alia*, surgical services.

20.  Defendant WVUSOM's Department of Anesthesiology is located in Ruby Memorial Hospital as is defendant WVUH's Surgical Services Department.  Ruby Memorial Hospital is the primary location where medical students and residents of defendant WVUSOM receive their clinical training, including clinical training in anesthesiology.

21.  Defendant WVUSOM's Department of Anesthesiology provides anesthesia services for all of the surgical procedures performed in defendant WVUH's Ruby Memorial Hospital.

22.  The faculty physicians in defendant WVUSOM's Department of Anesthesiology are also members of defendant WVUH's Medical Staff, providing anesthesiology services at Ruby Memorial Hospital.

23.  Defendant WVUH's bylaws require that all physicians appointed to its Medical Staff must also be members of the faculty of defendant WVUSOM.

24.  In addition to being faculty members of defendant WVUSOM, all physicians who are on defendant WVUH's Medical Staff, including the faculty physicians in defendant WVUSOM's Anesthesiology Department, are also members of defendant WVUMC-UHA which is a faculty practice plan that manages the clinical practice of the faculty physicians employed by defendant WVUSOM.

25.  Defendant WVUMC-UHA provides defendant WVUSOM's faculty physicians with a

clinical support staff including CRNAs for the faculty physicians in defendant WVUSOM's Department of Anesthesiology, to assist them in the administration of anesthesia during surgical procedures.  CRNAs are licensed registered nurses who are specially trained and certified in the administration of anesthesia.

26.  The faculty physicians in defendant WVUSOM's Department of Anesthesiology, who are also members of defendant UHA and defendant WVUH's Medical Staff, direct and oversee the anesthesia services provided to patients by the CRNAs who work in the Surgical Services/Anesthesiology Department of defendant WVUH's Ruby Memorial Hospital.

27.  Defendant WVUH requires all CRNAs who seek to render health care and patient care services within the Surgical Services/Anesthesiology Department of Ruby Memorial Hospital to submit an application for clinical privileges to defendant WVUH's Medical Staff Affairs department in accordance with defendant WVUH's written Credentialing Policy.

28.  Under defendant WVUH's Credentialing Policy, the term "clinical privileges" means permission granted by the Board of Directors of defendant WVUH to a physician, dentist or allied health professional, such as a CRNA, to render specified health care services in Ruby Memorial Hospital.

29.  In addition to securing permission from defendant WVUH's Board of Directors to render professional services to patients at Ruby Memorial Hospital as a member of defendant WVUH's Allied Health Professional Staff, defendant WVUH's Credentialing Policy provides that all CRNAs must have their clinical privileges reviewed and approved by defendant WVUH's Vice President of Nursing.

30.  All CRNAs are entitled to the hearing and appeal procedures in Article V of defendant

-6-

WVUH's Credentialing Policy in the event of an adverse privileging recommendation.

31. Defendant WVUH's Credentialing Policy further provides that the performance and clinical competence of all CRNAs shall be observed and evaluated during the first year following the grant of clinical privileges by defendant WVUH. If the individual fails to fulfill the responsibilities imposed on him as a member of the Allied Health Professional Staff and said failure continues for a second evaluation period, his clinical privileges with defendant WVUH shall automatically terminate.

32. Defendant WVUH's Credentialing Policy also provides that **a CRNA's** appointment and reappointment to the Allied Health Professional Staff is contingent upon, *inter alia*, attendance at relevant continuing education programs, the outcome of periodic performance evaluations, compliance with Medical Staff bylaws, policies and procedures and the ongoing maintenance of professional liability insurance coverage.

33. Defendant WVUH's credentialing process is overseen by the Vice President of Medical Staff Affairs who is appointed by defendant WVUH to the position pursuant to the terms of an Administrative Services Agreement between defendants WVUH and WVUMC-UHA.

34. Pursuant to the terms of the Administrative Services Agreement, defendant WVUH pays defendant WVUMC-UHA for the services provided by the individual appointed to the Vice President for Medical Staff Affairs position.

35. The individual appointed by defendant WVUH to the position of Vice President of Medical Staff Affairs must be a member of defendant WVUMC-UHA, is required to observe and conform to all directions and orders of defendant WVUH's Board of Directors and reports to the President of defendant WVUH.

36.   The individual appointed by defendant WVUH must also be an active member of defendant WVUH's Medical Staff which means that the individual is also a member of defendant WVUSOM's faculty.

37.   According to defendant WVUH's job description for the Vice President for Medical Staff Affairs, the individual appointed to the position also serves as defendant WVUSOM's Associate Dean for Hospital Clinical Affairs.

38.   The duties and responsibilities of defendant WVUH's Vice President for Medical Staff Affairs also include oversight over the appointment and management of medical directors for, *inter alia*, defendant WVUSOM's Department of Anesthesiology.

39.   The procedure for appointment and management of medical directors for defendant WVUSOM's Department of Anesthesiology and other specialized departments or units within defendant WVUH's Ruby Memorial Hospital is set forth in the Medical Direction and Support Agreement dated August 31, 2006, by and among defendants WVUH, WVUMC-UHA and WVUSOM.

40.   The operation of defendant WVUSOM's Anesthesiology Department and other specialized units, wherein medical care and related services are provided to patients in need of such services, is an integral part of the operation of defendant WVUH.

41.   Defendant WVUH has determined that the most efficient and expeditious method of arranging for and coordinating the provision of medical care to patients in defendant WVUSOM's Department of Anesthesiology and other specialized clinical departments or units is to appoint through defendant WVUMC-UHA faculty physicians of defendant WVUSOM who provide medical direction and administrative support for each such unit including the Anesthesiology clinical unit.

42.   Pursuant to the terms of a Medical Direction and Support Agreement, defendant WVUMC-UHA designates faculty physicians to provide medical direction services specified by defendant WVUH for defendant WVUSOM's Anesthesiology Department and other specialized clinical departments.

43.   The Medical Direction and Support Agreement further provides that defendant WVUH has the right to approve the faculty physicians designated by defendant WVUMC-UHA to provide medical direction for defendant WVUSOM's Anesthesiology Department and other specialized clinical departments.

44.   The Medical Direction and Support Agreement still further provides that the faculty physicians of defendant WVUSOM who are designated as medical directors by defendant WVUMC-UHA and approved by defendant WVUH are responsible to defendant WVUH's Vice President for Medical Staff Affairs for all administrative matters.

45.   The duties and responsibilities of the Medical Director for defendant WVUSOM's Department of Anesthesiology are set forth in Exhibit A to the Medical Direction and Support Agreement and include, *inter alia,*:

(a)  assuring Medical Staff coverage to meet the care needs of patients as they relate to the Department of Anesthesiology and formulating recommendations to defendant WVUH for the employment of professional and support staff for the Department of Anesthesiology; and

(b)  working with defendant WVUH and the administrative director of the Department of Anesthesiology to recruit, employ, orient and maintain a complete and competent staff to carry out necessary operations.

46.  Pursuant to the Medical Direction and Support Agreement, defendant WVUH pays defendant WVUMC-UHA the approximate sum of $2,000,000.00 annually for the Medical

-9-

Directors' services provided to all departments and units identified in the agreement including the Department of Anesthesiology.

47. Defendant WVUH also provides financial support to defendant WVUSOM's Department of Anesthesiology pursuant to a Mission Support Agreement dated July 1, 2001, between defendants WVUH and WVUSOM for the advancement of the defendants' common missions of teaching, indigent care, research and community service.

48. The amount of approved financial support to be provided by defendant WVUH to defendant WVUSOM's Department of Anesthesiology under the Mission Support Agreement as of July 1, 2008, is $7,025,000.00 per year.

49. Defendant WVUH's annual funding of defendant WVUSOM's Department of Anesthesiology is subject to a 20% withholding which is eligible for release upon defendant WVUH's confirmation that mutually established written quality and performance objectives are met or exceeded by defendant WVUSOM's Department of Anesthesiology.

50. On or about September 29, 2008, defendant WVUSOM delegated all of its duties and responsibilities under the Mission Support Agreement relating to its Department of Anesthesiology and other departments to defendant WVUMC-UHA which accepted said duties and responsibilities including the identification, submission and certification of funding requests to defendant WVUH.

51. Defendant WVUSOM also assigned its right to receive all funding payments approved by defendant WVUH under the Mission Support Agreement for the Department of Anesthesiology to defendant WVUMC-UHA.

**Defendants' exercise of control over essential terms, conditions and privileges of plaintiff Jackson's employment.**

52.  Plaintiff Jackson is a CRNA and at all times relevant hereto was an employee of Formal CRNAs, PLLC, which is a staffing firm located in Morgantown, West Virginia.  Formal CRNAs, PLLC is in the business of placing its employees in job assignments with its clients, which are primarily hospitals, to provide anesthesia services in connection with the performance of surgical procedures on patients at said hospitals.

53.  Formal CRNAs, LLC., negotiated the terms of employment with defendant UHA for plaintiff Jackson to work in the Surgical Services/Anesthesiology Department of defendant WVUH's Ruby Memorial Hospital, including his hourly rate of pay, the placement fee to be paid to Formal CRNAs, LLC and the requirement of no fewer than 30 days notice of termination of plaintiff Jackson's services.

54.  On or about March 22, 2007, David H. Wilks, MD, acting on behalf of defendant WVUMC-UHA, executed a contract with Formal CRNAs for the services of plaintiff Jackson as a CRNA in the Surgical Services/Anesthesiology Department of defendant WVUH's Ruby Memorial Hospital.  Pursuant to the terms of the contract, defendant WVUMC-UHA had to provide no fewer than 30 days notice of cancellation of plaintiff Jackson's services.

55.  At all times relevant hereto, Dr. Wilks was a professor in and the Chairman of defendant WVUSOM's Department of Anesthesiology.

56.  Dr. Wilks was also a member of defendant WVUH's Medical Staff and a member of defendant WVUMC-UHA.

57.  Payment for hours worked by plaintiff Jackson was made by defendant WVUMC-UHA to Formal CRNAs.

58.  In or about October of 2006, Formal CRNAs submitted plaintiff Jackson's curriculum

-11-

vitae to Dewey Morris ("Morris"), who at all relevant times hereto was employed by defendant WVUMC-UHA and held out to the public by defendants WVUH, WVUMC-UHA and WVUSOM as their chief CRNA, for the purpose of placing plaintiff Jackson as a CRNA working in the Surgical Services/Anesthesiology Department in Ruby Memorial Hospital.

59. As the chief CRNA, Morris made all staffing and scheduling decisions for the CRNAs employed by defendants WVUH, WVUMC-UHA and WVUSOM, including plaintiff Jackson.

60. At all times relevant hereto, Morris was plaintiff Jackson's direct supervisor.

61. In or about November of 2006, plaintiff Jackson submitted an application for clinical privileges to defendant WVUH's Medical Staff Affairs department pursuant to defendant WVUH's written Credentialing Policy.

62. In connection with plaintiff Jackson's application, defendant WVUH examined plaintiff Jackson's credentials in accordance with the provisions of its Credentialing Policy. Defendant WVUH's examination of plaintiff Jackson's credentials lasted from approximately November of 2006, through early April of 2007, during which defendant WVUH verified, *inter alia,* plaintiff Jackson's educational background, his employment history and all of his professional credentials, including his certification as a CRNA by the American Association of Nurse Anesthetists and his licensure as a registered professional nurse by the State of West Virginia and the Commonwealth of Pennsylvania.

63. A copy of the March 22, 2007, contract between defendant WVUMC-UHA and Formal CRNAs was provided to defendant WVUH in connection with its verification of plaintiff Jackson's credentials.

64. On or about April 5, 2007, Dr. Wilks, acting in his capacity as Chairman of defendant

WVUSOM's Department of Anesthesiology, contacted defendant WVUH's Medical Staff Affairs office and requested temporary privileges for plaintiff Jackson so that he could start working for the Surgical Services/Anesthesiology Department in Ruby Memorial Hospital on April 11, 2007.

65. On or about April 10, 2007, defendant WVUH granted temporary privileges to plaintiff Jackson.

66. Also on or about April 10, 2007, Dewey Morris called plaintiff Jackson and invited him to come to his office for an interview the next day.

67. On or about April 11, 2007, plaintiff Jackson met with Morris in his office, which is located in the Surgical Services/Anesthesiology Department of defendant WVUH's Ruby Memorial Hospital, for an interview. During the interview, Morris provided plaintiff Jackson with a letter dated April 10, 2007, from defendant WVUH's Vice President for Medical Staff Affairs notifying plaintiff Jackson that defendant WVUH granted temporary privileges to plaintiff Jackson. The letter indicated that notice of plaintiff Jackson's temporary privileges was provided by defendant WVUH to defendant WVUMC-UHA's human resources department and provider relations coordinator.

68. Plaintiff Jackson's interview with Morris lasted approximately 15 minutes after which Morris immediately assigned plaintiff Jackson to begin working for defendants WVUH, WVUMC-UHA and WVUSOM in the operating rooms of the Surgical Services/Anesthesiology Department at Ruby Memorial Hospital in Morgantown, West Virginia.

69. Upon the completion of the interview, Morris took plaintiff Jackson to the location in Ruby Memorial Hospital where hospital scrub clothing is distributed and plaintiff Jackson obtained scrub clothing so that he could begin working.

70. Like the scrub clothing that Morris was wearing, the scrub clothing that plaintiff Jackson

obtained that day and every day that he worked in defendant WVUH's Ruby Memorial Hospital was stamped on the front as being the property of defendant WVUH.

71.   Morris took plaintiff Jackson to one of the operating rooms in the Surgical Services/Anesthesiology Department in Ruby Memorial Hospital in order to enter plaintiff Jackson as an approved user in defendant WVUH's automated pharmaceutical control and dispensing system known as Pyxis.

72.   The Pyxis system is managed and controlled by defendant WVUH and is audited every 30 minutes to track narcotics that are dispensed and to whom they are dispensed.

73.   Plaintiff Jackson needed access to such drugs in order to perform his job of anesthetizing patients for the performance of surgical procedures.

74.   The only way to activate the Pyxis system is by fingerprint.  As the defendants' chief CRNA, Morris had administrative access to the Pyxis system for the purpose of adding approved users to the system.

75.   After interviewing plaintiff Jackson and assisting him in obtaining the required scrub clothing, Morris entered the Pyxis system and instructed plaintiff Jackson to enter his fingerprint five times in order to activate his ability to access the system.

76.   Through Morris, defendant WVUH provided plaintiff Jackson with electronic passwords and codes to access defendant WVUH's electronic patient records database, electronic medication administration records database and the anesthesiology database so that plaintiff Jackson could record all of his activities in the appropriate patient charts.

77.   On April 20, 2007, defendant WVUH's Board of Directors through the Joint Conference Committee approved plaintiff Jackson's application for clinical privileges and granted him clinical

privileges for a period of two years with defendant WVUSOM's Department of Anesthesiology which is located in defendant WVUH's Ruby Memorial Hospital.

78.   Shortly after he began his employment with the defendants, plaintiff Jackson was provided with a copy of defendant WVUH's Employee Handbook by Elizabeth Conrad, who is a facilitator employed by defendant WVUH working in the Surgical Services/Anesthesiology Department of Ruby Memorial Hospital.

79.   Plaintiff Jackson signed a receipt for his copy of defendant WVUH's Employee Handbook which includes defendant WVUH's policies with respect to performance expectations, behavior standards, discrimination and harassment, medical and personal leaves of absence, holidays and disability.

80.   Defendant WVUH's Employee Handbook refers to the reader as an employee of defendant WVUH and states that in the eyes of the patients, their family and the public, the reader does not just work at WVUH but rather is WVUH.

81.   Shortly after commencing work at defendant WVUH's Ruby Memorial Hospital, plaintiff Jackson obtained an identification badge in the Ruby Memorial Hospital security office.

82.   After having his photograph taken, plaintiff Jackson was handed a badge by the person in the security office who told plaintiff Jackson that this was the badge he was supposed to wear.

83.   Plaintiff Jackson's identification badge which he wore every day that he worked at defendant WVUH's Ruby Memorial Hospital bears the well-known "WV" logo of West Virginia University, the name "University Health Associates" and the term "Affiliate Card."

84.   Plaintiff Jackson was provided with an employee parking tag for his car which gave him access to designated areas in defendant WVUH's parking lot that are reserved for employees of

-15-

defendant WVUH.

85.  Defendant Jackson was provided with a jacket and a briefcase each of which bore the logo "WVU Anesthesia."

86.  Plaintiff Jackson was required by defendant WVUH to attend continuing education seminars and weekly staff meetings.

87.  Plaintiff Jackson received an employee discount on purchases made in defendant WVUH's cafeteria and gift shop.

88.  Plaintiff Jackson was provided with an employee mail box by defendant WVUH which was located in the employee break room on the 5th Floor of defendant WVUH's Ruby Memorial Hospital so that he could receive correspondence, memoranda and other information from the defendants relative to the performance of his duties and responsibilities as a CRNA for the defendants.

89.  Plaintiff Jackson performed his daily duties in operating rooms located in the Surgical Services/Anesthesiology Department of defendant WVUH's Ruby Memorial Hospital and used equipment supplied by defendant WVUH in the hospital's operating rooms to monitor the condition of each patient during the course of surgery.

90.  Plaintiff Jackson was told by Morris when to report for work and where specifically in the Surgical Services/Anesthesiology Department he was to work on any given day.  Morris set plaintiff Jackson's work schedule on a quarterly basis and informed plaintiff Jackson when he was scheduled to work and the length of his work shift.

91.  If plaintiff Jackson wanted or needed a day off, he had to ask Morris who would either grant or deny the request as he saw fit.

-16-

92.  On days that he was scheduled by Morris to work, plaintiff Jackson arrived at Ruby Memorial Hospital by 6:30 am, obtained clean scrub clothing provided by defendant WVUH and changed his clothes.

93.  Each day that he worked, plaintiff Jackson was provided with an assignment sheet that was created by Morris and anesthesiologists who are simultaneously members of defendant WVUH's Medical Staff, defendant WVUSOM's faculty and defendant UHA. The assignment sheet informed plaintiff Jackson in which operating room in the Surgical Services/Anesthesiology Department of Ruby Memorial Hospital each procedure to which he was assigned was going to be performed and the narcotics and other drugs that had been ordered by the physician performing each procedure.

94.  Plaintiff Jackson proceeded to the operating rooms specified on his assignment sheet at the appointed times, checked the equipment and operating room set up and logged into Pyxis to obtain the narcotics needed for the procedure scheduled to be performed.

95.  Plaintiff Jackson did not work independently but rather worked under the direction of the anesthesiologist on the case.

96.  Every day, plaintiff Jackson worked on the cases assigned to him by Morris and anesthesiologists who are on defendant WVUH's Medical Staff, defendant WVUSOM's faculty and who are members of defendant UHA.  If plaintiff Jackson completed the assigned work before the end of his shift, he would work on other cases assigned to him by Morris until the end of his shift.

97.  Plaintiff Jackson was not permitted to leave Ruby Memorial Hospital until he was told he could do so by Morris.

98.  Plaintiff Jackson's performance was evaluated by Morris and Dr. Wilks pursuant to

-17-

defendant WVUH's Credentialing Policy 6 months and 12 months following defendant WVUH's initial granting of clinical privileges to plaintiff Jackson in April of 2007.

**Dewey Morris' sexual harassment of plaintiff Jackson.**

99.   Beginning in or about April of 2007 and continuing until April 21, 2008, when plaintiff Jackson's employment with the defendants ended, plaintiff Jackson was subjected to unwanted and unwelcome verbal and physical sexual harassment by Morris, plaintiff Jackson's direct supervisor and the defendants' chief CRNA, both during and after business hours and on and off the business premises of defendant WVUH's Ruby Memorial Hospital.

100.   Plaintiff Jackson neither solicited nor incited Morris' conduct and at all times regarded Morris' conduct as both undesirable and offensive.   Plaintiff Jackson rejected all of Morris' sexual advances.

101.   Plaintiff Jackson was intimidated, embarrassed and humiliated by Morris' conduct.

102.   Morris' unwanted and unwelcome verbal and physical sexual harassment, several of which are described herein, consisted of comments regarding plaintiff Jackson's genitals, touching plaintiff Jackson's genitals and buttocks with his hand, rubbing his genitals against plaintiff Jackson's buttocks, attempting to perform oral sex on plaintiff Jackson while he slept and masturbating in front of plaintiff Jackson.

103.   For example, in or about August or September of 2007, plaintiff Jackson was directed by Morris to come to Morris' hotel room in order to discuss the work schedule.   Believing that he had no choice, plaintiff Jackson complied with Morris' demand and went to his hotel room.

104.   When plaintiff Jackson arrived at Morris' hotel room, Morris was drinking scotch and appeared to be drunk.   Morris had a copy of the work schedule in his hand and repeatedly stated that

he took care of plaintiff Jackson on the schedule.

105.  Morris handed the work schedule to plaintiff Jackson and offered him a drink.  As plaintiff Jackson was reviewing the schedule, Morris slid his hand up the leg of plaintiff Jackson's shorts, which he was wearing due to the warm weather.  Plaintiff Jackson was shocked by what Morris had done.

106.  Morris then exposed his penis and began masturbating in front of plaintiff Jackson, asking as he did so if plaintiff Jackson liked what Morris was doing and if he liked to watch.

107.  Plaintiff Jackson was upset by Morris' conduct and tried to leave the room but as he walked towards the door, Morris grabbed plaintiff Jackson's shorts and pulled him down on the bed while continuing to masturbate.  As he did so, Morris kept saying that he took care of plaintiff Jackson's work schedule.   Morris reached orgasm and plaintiff Jackson left the room.

108.  The next day at work, Morris approached plaintiff Jackson and asked him how he was feeling about what had occurred the previous evening in Morris' hotel room.  Morris said that he had taken care of plaintiff Jackson on the work schedule.  Plaintiff Jackson told Morris that he had made plaintiff Jackson very uncomfortable by his conduct.  Plaintiff Jackson said that he just wanted to do his work.

109.  Plaintiff Jackson reported the incident in Morris' hotel room to Janet Ford of Formal CRNAs.  Ms. Ford told plaintiff Jackson that Morris was always doing things like that.

110.  Plaintiff Jackson also reported the incident in Morris' hotel room to Dr. Richard P. Driver, Jr., who was the Director of Obstetric Anesthesiology in the Surgical Services/Anesthesiology Department of defendant WVUH's Ruby Memorial Hospital, and Dr. Matthew Watkins, who was the Medical Director of Perioperative Services in the Surgical

Services/Anesthesiology Department of defendant WVUH's Ruby Memorial Hospital. Both Drs. Driver and Watkins were members of defendant WVUH's Medical Staff, defendant WVUSOM's faculty and defendant WVUMC-UHA. Either Dr. Watkins or Dr. Driver stated that they had heard about Morris engaging in this type of conduct on prior occasions with other individuals.

111.  Even though Drs. Driver and Watkins were made aware of Morris' inappropriate conduct towards plaintiff Jackson in the hotel room, defendants WVUH, WVUMC-UHA and WVUSOM failed to investigate the matter or take any steps to address Morris' unwanted and unwelcome sexual harassment of plaintiff Jackson.

112.  Plaintiff Jackson also reported Morris' unwanted and unwelcome sexual harassment of him in the hotel room to two other physicians who work in the Surgical Services/Anesthesiology Department of defendant WVUH's Ruby Memorial Hospital.

113.  On another occasion in or about November or December of 2007, plaintiff Jackson was working an entire weekend in the Surgical Services/Anesthesiology Department of defendant WVUH's Ruby Memorial Hospital. When plaintiff Jackson started his shift that weekend, he saw that Morris was also present at work.

114.  When working extra long shifts, a call room in the Surgical Services/Anesthesiology Department of Ruby Memorial Hospital was provided by defendants WVUH, WVUMC-UHA and WVUSOM for plaintiff Jackson so that he could sleep when he was not needed to provide anesthesia services in the operating room. The door to plaintiff Jackson's call room had a lock and he had the only key card to the room except for Morris who, because of his status as a supervisor for the defendants, had a master key card which gave him access to all rooms in the Surgical Services/Anesthesiology Department of Ruby Memorial Hospital, including plaintiff Jackson's call

-20-

room.

115.  At one point during that weekend, plaintiff Jackson went to his call room to sleep. Plaintiff Jackson locked the door to the call room.

116.  Using his master key card, Morris gained access to plaintiff Jackson's locked call room while plaintiff was sleeping and touched plaintiff Jackson on his genitals in a sexual manner. Plaintiff Jackson discovered Morris was in his call room next to the bed when he was awakened by feeling someone's hand on his testicles and hot breath on his genitals as though someone was about to perform oral sex on him.

117.  Plaintiff Jackson was startled by Morris' inappropriate and unwanted sexual contact and jumped up out of the bed.  As plaintiff Jackson jumped out of the bed, he felt a sharp, excruciating pain in his left testicle.  After plaintiff Jackson jumped up out of the bed,  Morris left the room.

118.  Plaintiff Jackson sought and received medical treatment for the injury he sustained during Morris' unwanted and unwelcome sexual conduct towards him in the call room and was diagnosed with a left testicular torsion which is a very painful condition.

119.  Plaintiff Jackson complained about this incident to Janet Ford of Formal CRNAs, LLC.

120.  Morris' unwanted and unwelcome sexual harassment of plaintiff Jackson continued through the fall of 2007 and into early 2008.  Morris' conduct included grabbing plaintiff Jackson's buttocks, inviting plaintiff Jackson to a party that Morris was hosting at which **only men** would be present and inviting plaintiff Jackson to sleep in his hotel room.

121.  Plaintiff Jackson rejected Morris' sexual advances by walking away from Morris without responding to his inappropriate words or actions.

122.  In or about January of 2008, plaintiff Jackson went to Morris and requested a change in his work schedule.  Morris leaned back in his chair, spread his legs apart and made a gesture towards his crotch and said that plaintiff Jackson was getting on Morris' last nerve.  Morris suggested that they discuss plaintiff Jackson's request later and asked if plaintiff Jackson was staying at the hotel that night.  Morris' statement clearly suggested a request for sexual favors.

123.  When plaintiff Jackson said that he was not staying at the hotel, Morris responded to plaintiff Jackson's rejection in a very snide tone of voice.  Morris thereafter denied plaintiff Jackson's scheduling request.

124.  A week later, plaintiff Jackson went to Morris' office in order to get the work schedule for the second quarter of 2008.  Plaintiff Jackson attempted to make small talk and commented that something in the office smelled good.  In response, Morris said that it was his cologne, pushed his body into plaintiff Jackson and told plaintiff Jackson to smell him.  As he said this, Morris ran his thumb up plaintiff Jackson's leg.  Plaintiff Jackson did not respond to Morris' sexual advances and walked out of the office.

125.  After the January 2008 incident in his office, Morris began treating plaintiff Jackson in a very hostile manner.  Morris stopped cooperating with plaintiff Jackson on scheduling requests and repeatedly threatened to take away plaintiff Jackson's work hours, stating that he had given plaintiff Jackson plenty of chances to prove himself and that he could no longer take care of plaintiff Jackson.  It was clear from these comments by Morris that his hostility towards plaintiff Jackson arose out of plaintiff Jackson's rejection of Morris' sexual advances.

126.  In or about February of 2008, plaintiff Jackson was offered a full-time staff position at defendant WVUH's Ruby Memorial Hospital by Robert J. Porco, who was defendant WVUMC-

UHA's administrator of defendant WVUSOM's Department of Anesthesiology. A full-time staff position at Ruby Memorial Hospital would have provided plaintiff Jackson with health care and pension benefits.

127. When he learned about the offer of the full time staff position, Morris told plaintiff Jackson that he was not going to let the defendants hire plaintiff Jackson for the position.

128. Shortly thereafter, plaintiff Jackson was advised by Janet Ford of Formal CRNAs that Morris no longer wanted to use plaintiff Jackson's services in the Surgical Services/Anesthesiology Department of defendant WVUH's Ruby Memorial Hospital and that he was going to take defendant Jackson off of the work schedule.

129. At plaintiff Jackson's request, Ms. Ford contacted Dr. Wilks, who was the chairman of the Anesthesiology Department at the time. Ms. Ford informed Dr. Wilks that Morris' problem with plaintiff Jackson was not related to a performance issue but rather was related to Morris' sexual advances towards plaintiff Jackson and plaintiff's rejection of those sexual advances.

130. Dr. Wilks refused to get involved and left the decision about plaintiff Jackson's continued employment by the defendants to Morris.

131. In February of 2008, Morris presented plaintiff Jackson with a letter that Morris had prepared in which plaintiff Jackson requested the suspension of his clinical privileges by defendant WVUH. When plaintiff Jackson asked Morris why Morris was presenting him with a resignation letter, Morris said that plaintiff Jackson knew how Morris played and that he had cooked his goose with Morris. This statement clearly suggested that plaintiff Jackson's refusal to acquiesce in Morris' crude, unwanted and unwelcome sexual overtures had resulted in Morris' hostility towards plaintiff Jackson with the intention to cause the termination of his employment by the defendants.

-23-

132.  Plaintiff Jackson initially refused to sign the resignation letter which Morris had prepared and presented to him for signature.  However, Morris continued to treat plaintiff Jackson in a hostile manner and continued to threaten to terminate his employment with the defendants.

133.  As a result of the sexual harassment, Morris' hostility towards him and the defendants' failure to act in any way on his complaints, plaintiff Jackson felt compelled to sign the letter that Morris had prepared and presented to him in February of 2008, requesting that defendant WVUH suspend all of his privileges and on April 21, 2008, plaintiff Jackson signed the letter.

## COUNT I - SEXUAL HARASSMENT
## PLAINTIFF JACKSON v. DEFENDANTS WVUH, WVUMC-UHA, WVU and WVUSOM

134.  Paragraphs 1 through 133 of the foregoing Complaint are incorporated herein by reference as though more fully set forth here at length.

135.  Defendants WVUH, WVUMC-UHA, WVU and WVUSOM shared control of the Surgical Services/Anesthesiology Department in Ruby Memorial Hospital and each exercised sufficient control over essential terms, conditions and privileges of plaintiff Jackson's employment so as to be plaintiff Jackson's joint employer with Formal CRNAs.

136.  As a joint employer, defendants WVUH, WVUMC-UHA, WVU and WVUSOM are each liable to plaintiff Jackson for the hostile work environment that he suffered as a result of the sexual harassment by Morris.

137.  Title VII and the West Virginia Human Rights Act permit plaintiff Jackson to sue for the unlawful employment practices of defendants WVUH, WVUMC-UHA, WVU and WVUSOM constituting violations related to sexual harassment.

138. Plaintiff Jackson, being male, is a member of a protected class on the basis of his gender.

139. Plaintiff Jackson was repeatedly subjected to unwelcome, unwanted and unsolicited sexual advances and remarks by his direct supervisor and the defendants' Chief CRNA, Dewey Morris, on numerous occasions.

140. The harassment suffered by plaintiff Jackson was based on his sex in that Morris was motivated by a sexual desire for plaintiff Jackson.

141. The sexual harassment of plaintiff Jackson by Morris was sufficiently severe and pervasive to create an abusive and hostile work environment.

142. Plaintiff Jackson was forced to suffer in a hostile work environment until he had no choice but to resign to stop the harassment by Morris.

143. Morris was not disciplined, terminated and/or otherwise reprimanded for his sexual harassment of plaintiff Jackson.

144. Defendants WVUH, WVUMC-UHA, WVU and WVUSOM violated Title VII and the West Virginia Human Relations Act in the following manner:

(a) failing to properly train their employees in the definition of sexual harassment and failing to prevent sexual harassment in the workplace;

(b) failing to respond to plaintiff Jackson's complaints of sexual harassment;

(c) allowing a hostile work environment to exist based on sexual harassment.

145. As a direct and proximate result of the aforesaid unlawful, willful and deliberate discrimination against plaintiff Jackson by the defendants, plaintiff Jackson was discriminatorily deprived of wages and benefits, prospective wages and benefits and opportunities for promotion and

job assignments due him.

146.   As a further direct and proximate result of the defendants' unlawful, willful and deliberate discrimination against plaintiff Jackson, plaintiff Jackson experienced physical trauma, embarrassment, humiliation, loss of dignity and personhood and emotional distress.

WHEREFORE, plaintiff Jackson prays the Court as follows:

(a)   That plaintiff be made whole and awarded actual damages, including without limitation, reimbursement of back pay, plus interest, all wages and benefits lost to which he was otherwise entitled by virtue of his employment, and a reasonable attorney's fee, all in accordance with provisions of Title VII, 42 U.S.C. §2000e-5(g) and (k) and the provisions of the West Virginia Human Relations Act, W. Va. Code §5-11-13(c);

(b)   That plaintiff be awarded compensatory and punitive damages in accordance with 42 U.S.C. §1981a(a) and W. Va. Code §5-11-13(c);

(c)   That the defendants be taxed with all costs of this action;

(d)   For such other and further relief as the Court deems just and proper.

## COUNT II - SEXUAL HARASSMENT
## PLAINTIFF JACKSON v. DEFENDANT WVUH

147.   Paragraphs 1 through 146 of the foregoing Complaint are incorporated herein by reference as though more fully set forth here at length.

148.   A large proportion of the individuals working within defendant WVUSOM's Anesthesiology Department, which is physically located within defendant WVUH's Ruby Memorial Hospital, are not directly employed by defendant WVUH but rather are employed by either defendant WVUMC-UHA or defendant WVUSOM.

149.   As the entity with overall responsibility for operating the clinical facilities at Ruby

Memorial Hospital, defendant WVUH exercises significant control over the operations of defendants WVUMC-UHA and WVUSOM with respect to the employment of CRNAs such as plaintiff Jackson and their need to have access to Ruby Memorial Hospital's physical location and the machinery, instruments and supplies found there, including narcotics and other drugs, as well as the hospital's electronic patient charting databases in order to perform the work for which they are hired.

150.   CRNAs employed by defendants WVUMC-UHA and WVUSOM are subject to defendant WVUH's Credentialing Policy.  Defendant WVUH's grant of clinical privileges to a CRNA and appointment of the CRNA to its Allied Health Professional Staff pursuant to the Credentialing Policy is required before CRNAs employed by defendant WVUMC-UHA and WVUSOM can render health care and patient care services in the Surgical Services/Anesthesiology Department of Ruby Memorial Hospital.

151.   Defendant WVUH's Credentialing Policy provides that as a condition of its consideration of an individual's application for clinical privileges and as a condition of continued appointment to the Allied Health Professional Staff if clinical privileges are granted, CRNAs must meet the responsibilities specifically enumerated in the Credentialing Policy which include, *inter alia:*

    (a)    abiding by defendant WVUH's policies including all bylaws, rules and regulations as shall be in force from time to time during the period of clinical privileges;

    (b)    complying with all Federal and State laws;

    (c)    providing defendant WVUH with current information regarding all questions on the application for clinical privileges; and

    (d)    cooperating with and permitting unannounced screening of blood and urine for controlled substances.

152.  Reappointment to defendant WVUH's Allied Health Professional Staff is contingent upon, in addition to other criteria set forth in the Credentialing Policy, attendance at relevant continuing education programs.

153.  Defendant WVUH's Credentialing Policy also requires that as a condition of a CRNA's appointment to the Allied Health Professional Staff, the performance and clinical competence of the CRNA must be observed and evaluated through Focused Professional Practice Evaluation as to the individual's clinical competence, general behavior and conduct in Ruby Memorial Hospital.

154.  If the 6 month and 12 month evaluations show that an individual CRNA has not fulfilled his responsibilities as an appointee to defendant WVUH's Allied Health Professional Staff, defendant WVUH's Credentialing Policy provides that the individual may be monitored for an additional evaluation period.

155.  Defendant WVUH's Credentialing Policy further provides that if a CRNA has not fulfilled his responsibilities as an appointee to defendant WVUH's Allied Health Professional Staff by the end of the second evaluation period, that CRNA's clinical privileges shall automatically terminate.

156.  By reserving for itself the right to grant and terminate clinical privileges and appoint individuals to be CRNAs on its Allied Health Professional Staff, defendant WVUH has the right to terminate the employment of an individual employed by defendants WVUMC-UHA and WVUSOM.

157.  Defendant WVUH also disseminates its Employee Handbook to all CRNAs employed by defendant WVUMC-UHA and WVUSOM who work in facilities operated by defendant WVUH such as the Surgical Services/Anesthesiology Department in Ruby Memorial Hospital.

158.  Defendant WVUH's Employee Handbook includes a code of conduct and anti-

-28-

harassment and anti-discrimination policies which are applicable to all persons working in defendant WVUH's Ruby Memorial Hospital including plaintiff Jackson and CRNAs employed by defendant WVUMC-UHA and WVUSOM.

159.  Defendant WVUH's Employee Handbook includes provisions which require persons working at any of its facilities which includes Ruby Memorial Hospital to, *inter alia*, attend and participate in departmental staff meetings, meet all job-specific standards, demonstrate knowledge of the technical aspects of the position in which the person is working, meet all continuing education requirements and provide the department in which he is working with current information on all licenses, certifications and registrations required for the performance of the job.

160.  Defendant WVUH's Employee Handbook also includes anti-discrimination and anti-harassment policies which state that violators of the policies are subject to disciplinary sanctions by defendant WVUH including, *inter alia,* the termination of clinical privileges.

161.  At all times relevant hereto, defendant WVUH exercised or maintained the right to exercise the requisite level of control in an agency relationship to be vicariously liable for the acts of its agents, defendants WVUMC-UHA and WVUSOM.

162.  Accordingly, defendant WVUH is vicariously liable to plaintiff Jackson for the violation of Title VII and the West Virginia Human Rights Act by defendants WVUMC-UHA and WVUSOM through the actions of plaintiff Jackson's direct supervisor, Dewey Morris, who was employed by defendants WVUMC-UHA and WVUSOM.

WHEREFORE,  plaintiff Jackson prays the Court as follows:

(a)    That plaintiff be made whole and awarded actual damages, including without limitation, reimbursement of back pay, plus interest, all wages and benefits lost to which he was otherwise entitled by virtue of his employment, and a reasonable

attorney's fee, all in accordance with provisions of Title VII, 42 U.S.C. §2000e-5(g) and (k) and the provisions of the West Virginia Human Relations Act, W. Va. Code §5-11-13(c);

(b)     That plaintiff be awarded compensatory and punitive damages in accordance with 42 U.S.C. §1981a(a) and W. Va. Code §5-11-13(c);

(c)     That the defendants be taxed with all costs of this action;

(d)     For such other and further relief as the Court deems just and proper.

## COUNT III - SEXUAL HARASSMENT
## PLAINTIFF JACKSON v. DEFENDANT WVUH

163.   Paragraphs 1 through 162 of the foregoing Complaint are incorporated herein by reference as though more fully set forth here at length.

164.   When Janet Ford of Formal CRNAs called plaintiff Jackson about the CRNA position in defendant WVUSOM's Anesthesiology Department, she told plaintiff Jackson that the position was with defendant WVUH's Ruby Memorial Hospital.

165.   Plaintiff Jackson reasonably believed that he was applying for a position with defendant WVUH by virtue of the fact that in or about November of 2006, he received a large envelope from defendant WVUH containing documents to be completed by plaintiff Jackson and others in connection with defendant WVUH's credentialing process.  All of the forms included in the packet were required to be returned to defendant WVUH's Medical Staff Affairs department.

166.   Plaintiff Jackson's interview for the position with Dewey Morris, who was identified as the defendants' chief CRNA, was conducted in Morris' office which is located in the Surgical Services/Anesthesiology Department of defendant WVUH's Ruby Memorial Hospital.

167.   Morris was dressed in scrub clothing which was labeled as being the property of

-30-

defendant WVUH.

168.  At the conclusion of the interview, it was Morris who provided plaintiff Jackson with access to defendant WVUH's automated pharmaceutical control and dispensing system by using his administrative access to the system to add plaintiff Jackson as a new approved user.

169.  Morris also saw to it that plaintiff Jackson was provided with passwords and codes in order to access defendant WVUH's electronic patient records databases so that he could record his activities in the appropriate patient charts.

170.  Morris also had a master key card which gave him access to numerous rooms within Ruby Memorial Hospital.

171.  Plaintiff Jackson performed all of his daily duties in the operating rooms located in the Surgical Services/Anesthesiology Department of defendant WVUH's Ruby Memorial Hospital.

172.  Plaintiff Jackson  was instructed by Dewey Morris when he was to report to work and which specific operating rooms in the Surgical Services/Anesthesiology Department of Ruby Memorial Hospital he would be working in.

173.  Specific work assignments for each day were assigned to plaintiff Jackson by either Morris or by physicians in the Anesthesiology Department, who plaintiff Jackson reasonably believed were employed by defendant WVUH.  Orders for specific drugs and narcotics for each assignment were made by the physician performing the procedure.

174.  Plaintiff Jackson accepted these instructions from  Morris and the physicians who were performing the surgeries in the reasonable belief that his activities were being rendered on behalf of defendant WVUH.

175.  Plaintiff Jackson was not aware of the existence of defendant WVUMC-UHA until he

received his identification badge.  No one pointed out to him that defendant WVUMC-UHA was a separate entity or explained the complex interrelationships among defendants WVUH, WVUMC-UHA and WVUSOM.

176.  Rather, defendant WVUH represented to plaintiff Jackson and all persons working within the walls of Ruby Memorial Hospital that they don't just work at WVUH, they are WVUH.

177.  Thus, defendant WVUH held itself out to plaintiff Jackson and the public as an ostensible employer of persons working within the walls of the facilities that it operates, including Ruby Memorial Hospital, with the apparent authority to control the actions of said persons.

178.  Plaintiff Jackson justifiably relied on defendant WVUH's apparent authority over Dewey Morris to provide him with a workplace free from sexual harassment.

179.  As the ostensible or apparent employer, defendant WVUH is liable to plaintiff Jackson for the violation of Title VII and the West Virginia Human Rights Act by defendants WVUMC-UHA and WVUSOM through the actions of plaintiff Jackson's direct supervisor, Dewey Morris, who was employed by defendants WVUMC-UHA and WVUSOM.

WHEREFORE,  plaintiff Jackson prays the Court as follows:

(a)    That plaintiff be made whole and awarded actual damages, including without limitation, reimbursement of back pay, plus interest, all wages and benefits lost to which he was otherwise entitled by virtue of his employment, and a reasonable attorney's fee, all in accordance with provisions of Title VII, 42 U.S.C. §2000e-5(g) and (k) and the provisions of the West Virginia Human Relations Act, W. Va. Code §5-11-13(c);

(b)    That plaintiff be awarded compensatory and punitive damages in accordance with 42 U.S.C. §1981a(a) and W. Va. Code §5-11-13(c);

(c)    That the defendants be taxed with all costs of this action;

(d)    For such other and further relief as the Court deems just and proper.

Respectfully submitted,

LAW OFFICE OF TRAVIS R.
FITZWATER

By_____

Travis R. Fitzwater
WV Bar No. _____8805_____
(Email) fitzwater@aol.com

235 High Street
Suite 711
Morgantown, WV 26507
(Phone) 304-296-8510
(Fax) 304-296-8511

-and-

FRIEDMAN and FRIEDMAN

By_____

Edward B. Friedman
PA I.D. No. 09688
(Email) ebf@friedman-law.com
Gloria A. Aiello
PA I.D. No. 501125
(Email) gaa@friedman-law.com

900 Fifth Avenue
Pittsburgh, PA 15219
(Phone) 412-261-5834
(Fax) 412-261-0350

JURY TRIAL DEMANDED

Dated: _July 9, 2010_____

-33-