IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


DOUGLAS L. JACKSON,

      Plaintiff,

v.                                        Civil Action No. 1:10CV107
                                                 (STAMP)
WEST VIRGINIA UNIVERSITY HOSPITALS, INC.,
WEST VIRGINIA UNIVERSITY MEDICAL CORPORATION,
d/b/a UNIVERSITY HEALTH ASSOCIATES,
WEST VIRGINIA UNIVERSITY BOARD OF GOVERNORS,
for and on behalf of WEST VIRGINIA UNIVERSITY
and WEST VIRGINIA UNIVERSITY SCHOOL OF MEDICINE,

      Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>
<u>DENYING AS MOOT DEFENDANT WEST VIRGINIA UNIVERSITY
BOARD OF GOVERNORS' MOTION TO DISMISS;
DENYING AS MOOT DEFENDANT WEST VIRGINIA UNIVERSITY
HOSPITALS, INC.'S MOTION TO DISMISS;
DENYING AS MOOT DEFENDANT WEST VIRGINIA UNIVERSITY
MEDICAL CORPORATION d/b/a UNIVERSITY
HEALTH ASSOCIATES' MOTION TO DISMISS;
DENYING DEFENDANT WEST VIRGINIA UNIVERSITY
BOARD OF GOVERNORS' MOTION TO DISMISS AMENDED COMPLAINT;
GRANTING IN PART AND DENYING IN PART DEFENDANT
WEST VIRGINIA UNIVERSITY MEDICAL CORPORATION
d/b/a UNIVERSITY HEALTH ASSOCIATES
MOTION TO DISMISS AMENDED COMPLAINT;
GRANTING IN PART AND DENYING IN PART
DEFENDANT WEST VIRGINIA UNIVERSITY
HOSPITALS, INC.'S MOTION TO DISMISS AMENDED COMPLAINT;
AND DENYING AS MOOT THE PLAINTIFF'S MOTION FOR LEAVE
TO CONDUCT DISCOVERY PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 56(f)</u>


I.  <u>Procedural History</u>

      The plaintiff, Douglas L. Jackson, filed a complaint against

the defendants in this Court, alleging sex discrimination in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e, <u>et seq</u>. ("Title VII") and the West Virginia Human Rights

Act, W. Va. Code § 5-11-1, <u>et seq</u>. ("WVHRA").  The defendants filed

three separate motions to dismiss.  In its motion to dismiss, defendant West Virginia University Board of Governors ("WVU BOG") stated that the West Virginia University School of Medicine ("WVU SOM") is not a separate entity from WVU BOG.  The plaintiff then filed an amended complaint, which makes clear that WVU SOM is not a separate defendant from WVU BOG.  Because the plaintiff filed an amended complaint, this Court denies as moot WVU BOG's motion to dismiss, West Virginia University Hospital, Inc.'s ("WVUH") motion to dismiss, and West Virginia University Medical Corporation d/b/a University Health Associates' ("WVUMC-UHA") motion to dismiss.  For the reasons set forth below, this Court denies WVU BOG's motion to dismiss amended complaint.  Further, this Court grants in part and denies in part WVUMC-UHA's motion to dismiss amended complaint and WVUH's motion to dismiss amended complaint.  Finally, this Court denies as moot the plaintiff's motion for leave to conduct discovery pursuant to Federal Rule of Civil Procedure ("Rule") 56(f).

## II.  Facts[1]

The plaintiff worked at Ruby Memorial Hospital in Morgantown, West Virginia as a Certified Registered Nurse Anesthetist ("CRNA").  Formal CRNAs PLLC, a staffing firm in Morgantown, employed the plaintiff.  Formal CRNAs negotiated the terms of services with the hospital for the plaintiff to work in the Surgical Services/

---

[1]For purposes of deciding these motions, the facts are based upon the allegations contained in the amended complaint.

Anesthesiology Department at Ruby Memorial. The plaintiff alleges acts of verbal and physical sexual harassment by Dewey Morris, an employee and supervisor employed by WVUMC-UHA. The plaintiff resigned about one year after the alleged sexual harassment began. The plaintiff contends that the defendants exercised substantial control over the essential terms, conditions, and privileges of his employment including his hiring, the means and manner of his work performance, the frequency, length and location of his work, and his termination.

## II. <u>Applicable Law</u>

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept all well-pled facts contained in the complaint as true. <u>Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc</u>, 591 F.3d 250, 255 (4th Cir. 2009). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." <u>Id.</u> (citing <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)). A court will decline to consider "unwarranted inferences, unreasonable conclusions, or arguments." <u>Wahi v. Charleston Area Med. Ctr., Inc.</u>, 562 F.3d 599, 615 n.26 (4th Cir. 2009).

It has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5B Charles Alan Wright

& Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356 (3d ed. 1998). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. <u>Id.</u> For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). <u>Id.</u> § 1357.

A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" <u>Giarratano v. Johnson</u>, 521 F.3d 298, 302 (4th Cir. 2008) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Nemet Chevrolet</u>, 591 F.3d at 256 (quoting <u>Iqbal</u>, 129 S. Ct. at 1949). Detailed factual allegations are not required, but the facts alleged must be sufficient "to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555.

## III. <u>Discussion</u>

Title VII prohibits discrimination on the basis of sex. All of the defendants claim that the plaintiff has failed to state a claim for sex discrimination because the plaintiff is not an

employee under Title VII or the WVHRA. An "employee" under Title VII is "an individual employed by an employer." 42 U.S.C. § 2000e(f). An "employer" is defined as a "person . . . who has fifteen or more employees" during a specified time period. 42 U.S.C. § 2000e(b).[2] While Title VII does not cover independent contractors, "Congress has left the term 'employee' essentially undefined insofar as an employee is to be distinguished from an independent contractor." <u>Cilecek v. Inova Health System Servs.</u>, 115 F.3d 256, 259 (4th Cir. 1997). When Congress uses, but leaves undefined, the term "employee" in a statute, "the courts will presume that Congress intended to describe 'the conventional master-servant relationship as understood by common-law agency doctrine.'" <u>Id.</u> (quoting <u>Nationwide Mut. Ins. Co. v. Darden</u>, 503 U.S. 318, 322-23 (1992)). The Supreme Court has identified several factors as relevant in determining whether a person is an employee or an independent contractor:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign

---

[2]The WVHRA defines an "employer" as "any person employing twelve or more persons within the state." W. Va. Code § 5-11-3(d). West Virginia courts "construe the [WVHRA] to coincide with the prevailing federal application of Title VII unless there are variations in the statutory language that call for divergent applications or there are some other compelling reasons justifying a different result." <u>Hanlon v. Chambers</u>, 464 S.E.2d 741, 754 (W. Va. 1995).

additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-52 (1989). The Reid Court stated that "no one factor is determinative, and the consideration of factors must relate to the particular relationship under consideration." Cilecek, 115 F.3d at 260 (citing Reid, 490 U.S. at 752). The distinction between an employee and an independent contractor "rests on the degree of control exercised by the hiring party." Id.

It is also possible "that an employee may have more than one employer while doing a specific act." Maynard v. Kenova Chem. Co., 626 F.2d 359, 361 (4th Cir. 1980). This doctrine, known as the loaned servant doctrine, "provides that an employee directed or permitted to perform services for another 'special' employer may become that employer's employee while performing those services." Id. (citing Restatement (Second) of Agency § 227 (1958)). "[W]here the special employer controls the means and manner of the temporary employee's work, the temporary employee is considered an employee of both the temporary agency and the special employer." Mullis v. Mechanics & Farmers Bank, 994 F. Supp. 680, 685 (M.D.N.C. 1997).

A.    West Virginia University Board of Governors

In its motion to dismiss, WVU BOG argues that the plaintiff has not plead sufficiently that he was an employee. Instead, WVU

BOG contends that the plaintiff was an independent contractor, thus outside the protection of Title VII or the WVHRA. WVU BOG believes that, even if the plaintiff was an employee and not an independent contractor, WVU BOG was not his employer and did not exercise control over him. The plaintiff believes that he was a "loaned servant" and his employment status should be determined under a joint employer theory. The plaintiff states that even if his employment situation was examined under an independent contractor analysis, rather than a joint employer analysis, he was still an employee because he did not exercise professional independence in discharging his services to patients as he was supervised and directed by anesthesiologists.

It is premature at this time for this Court to determine whether the plaintiff was an employee, a loaned servant, or an independent contractor. Looking to the facts alleged in the amended complaint in the light most favorable to the plaintiff, this Court finds that the plaintiff has alleged enough facts to state a claim that is plausible on its face. The plaintiff states in his amended complaint that WVU BOG, acting through WVU SOM exercised control over the plaintiff's hiring, firing and conditions of employment. The plaintiff alleges that WVU BOG acting through WVU SOM and WVUH held out Dewey Morris, an employee of WVUMC-UHA, as chief CRNA in WVU SOM's Department of Anesthesiology. Morris hired the plaintiff after an interview and review of the plaintiff's curriculum vitae. The Chairman of WVU

SOM's Department of Anesthesiology allegedly executed the contract for the plaintiff's services and submitted a request to WVUH in his capacity as Chairman of WVU SOM's Department of Anesthesiology seeking temporary clinical privileges for the plaintiff so he could start work at Ruby Memorial. The plaintiff alleges substantial control by WVU BOG in his termination. Morris, in his capacity as chief CRNA in WVU SOM's Department of Anesthesiology, decided to terminate the plaintiff. Morris prepared the resignation letter for the plaintiff to sign.

The plaintiff alleges control by WVU BOG acting through WVU SOM in the terms and conditions of his employment. The plaintiff states that Morris set the plaintiff's schedule, including when and where to report for work and the length of work shifts. The plaintiff could only leave the hospital with Morris' permission. The plaintiff's work assignments were made by Morris and the faculty anesthesiologists in WVU SOM's Department of Anesthesiology. The plaintiff states that he did not work independently, but rather under the direction of anesthesiologists in WVU SOM's Department of Anesthesiology. The plaintiff contends that he did not exercise professional independence in discharging his services. The narcotics and drugs to be used in surgeries were ordered by the physicians performing the procedure and not by the plaintiff. The instrumentalities of the plaintiff's work were provided to the plaintiff by WVUH, which shares control of the Surgical Services/Anesthesiology Department of the hospital with

WVU BOG acting through WVU SOM.  All duties of the plaintiff were performed in the hospital.  The plaintiff had to give at least thirty days written notice to end his services to the defendants.

Defendant WVU BOG believes that these facts are not sufficient to state a claim.  WVU BOG argues that the plaintiff was offered a full time staff position in February 2008, ten months after he began working at the hospital.  WVU BOG states that the plaintiff could not have been offered a full time staff position if he was already an employee.  This Court does not have enough facts at this time to determine if this is determinative.  Furthermore, in determining the status of a worker, this Court must look to all facts.  As stated above, the law of the United States Court of Appeals for the Fourth Circuit acknowledges it is possible to have more than one "employer" at one time.

WVU BOG also contends that the plaintiff's examples of control are all strictly administrative oversight and that the plaintiff was paid as an independent contractor, and did not receive benefits.  Again, these are all factors that will go to the ultimate decision of the plaintiff's status.  However, the plaintiff alleges that the source of the instrumentalities and tools was linked to WVU BOG acting through WVU SOM.  He alleges that the skill required in his job was not sufficient to make him an independent contractor.  He further alleges that the location of the work was controlled in part by WVU BOG acting through WVU SOM. He stated that after projects were completed, but before the end of

his shift, Morris would assign the plaintiff additional work. He also alleges that he was supervised and directed by anesthesiologists in WVU SOM's Department of Anesthesiology. Taking these facts in light most favorable to the plaintiff, the plaintiff has alleged enough to show a possible employer-employee relationship. Accordingly, WVU BOG's motion to dismiss must be denied.

B.   West Virginia University Medical Corporation d/b/a University Health Associates

WVUMC-UHA also contends that, while it is an "employer" under Title VII and the WVHRA, the plaintiff has not plead sufficient facts to show that he was an "employee." This Court disagrees. As stated above, it is possible for a worker to have more than one employer at a given time. Maynard, 626 F.2d at 361. Here, the plaintiff has plead sufficient facts to state a claim that he was a joint employee of WVUMC-UHA and Formal CRNAs. In his amended complaint, the plaintiff alleges that sufficient control over the plaintiff's hiring, firing, and conditions of employment by WVUMC-UHA existed. The plaintiff alleges that WVUMC-UHA employed Dewey Morris, who made all decisions relating to staffing for CRNAs and made the decision to hire the plaintiff after review of his curriculum vitae and conducting and interview. Morris allegedly also made the decision to terminate the plaintiff. Morris set the plaintiff's work schedule and Morris could assign the plaintiff additional work if the plaintiff completed all of his assignments

prior to the end of his shift. The plaintiff alleges that WVUMC-UHA contracted with Formal CRNAs for the plaintiff's services and that David H. Wilks, M.D., a member of WVUMC-UHA, executed the contract on behalf of WVUMC-UHA. The plaintiff states that he did not work independently, but was supervised and directed by anaesthesiologists, all of whom were members of WVUMC-UHA. All of the narcotics and drugs used in each case were ordered by the anaesthesiologists.

The plaintiff has alleged facts, which, taken as true, state a claim for relief that rises above the speculative level. As mentioned above, it is too early to determine whether the plaintiff was an independent contractor, a joint employee, or an employee for purposes of Title VII and the WVHRA. The parties need to conduct discovery to determine whether a genuine issue of fact exists as to the plaintiff's employment status. Accordingly, WVUMC-UHA's motion to dismiss is denied as to the issue of whether the plaintiff is an employee under Title VII and the WVHRA.

WVUMC-UHA asks this Court to dismiss Counts II and III of the amended complaint as they relate to WVUMC-UHA. The plaintiff states that this motion should be denied as moot because the plaintiff did not name WVUMC-UHA in Counts II and III. This Court will dismiss WVUMC-UHA as to Counts II and III of the plaintiff's amended complaint. Accordingly, WVUMC-UHA's motion to dismiss is granted in part as to Counts II and III.

C.  <u>West Virginia University Hospitals, Inc.</u>

1.  <u>Outside Documents</u>

WVUH attached a position statement that it filed with the United States Equal Employment Opportunity Commission and three affidavits to its motion to dismiss.  The plaintiff filed a separate motion requesting leave to conduct discovery pursuant to Rule 56(f) in the event that this Court considered the documents outside the pleadings.  This Court finds that the plaintiff is correct that WVUH's motion to dismiss can be decided without converting it into a motion for summary judgment.  "Although as a general rule, extrinsic evidence should not be considered at the 12(b)(6) stage, [the Fourth Circuit has] held that when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'"  <u>Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.</u>, 367 F.3d 212, 234 (4th Cir. 2004) (internal citations omitted).  <u>See also</u> <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint, the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.");  <u>Pension Benefit Guar. Corp. v. White Consol Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1995) ("[A] court may consider an indisputably authentic document that a defendant

attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); <u>Phillips v. LCI Intern., Inc.</u>, 190 F.3d 609, 618 (4th Cir. 1999) ("We note that although the stockholders failed to attach that article to their complaint ([the defendant] attached it to its motion to dismiss), a court may consider it in determining whether to dismiss the complaint because it was integral to and explicitly relied on in the complaint and because the plaintiffs do not challenge its authenticity."); <u>Venture Assocs. Corp. v. Zenith Data Sys. Corp.</u>, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

Here, neither the position statement nor the affidavits were referenced or relied upon in the plaintiff's amended complaint. Accordingly, these documents are considered documents outside of the pleadings. This Court finds that it can rule on the motion to dismiss without looking to the position statement or the affidavits. Accordingly, this Court will not convert the motion to a motion for summary judgment and denies as moot the plaintiff's motion for leave to conduct discovery pursuant to Rule 56(f).

2.   <u>Count I</u>

As to the merits of WVUH's motion to dismiss, this Court finds that the plaintiff's amended complaint sufficiently pleads an employer-employee relationship under a joint employer theory. This

Court concludes that, taking the plaintiff's allegations in the amended complaint as true, that WVUH exercised a sufficient amount of control over the firing, hiring, and conditions of the plaintiff's employment to survive a motion to dismiss. WVUH allegedly requires all CRNAs rendering patient care to apply for clinical privileges through WVUH's Medical Staff Affairs department pursuant to WVUH's written Credentialing Policy. The Credentialing Policy requires clinical privileges for CRNAs to be reviewed and approved by WVUH's Vice President of Nursing. The plaintiff also alleges that CRNAs are entitled to the hearing and appeal procedures in Article V of WVUH's Credentialing Policy where an adverse privileging recommendation occurs.

As mentioned above, the plaintiff allegedly was hired and fired by Dewey Morris, an employee of WVUMC-UHA, but allegedly was held out to the public by WVUH as its chief CRNA. Morris allegedly hired the plaintiff for the purpose of placing him as a CRNA in WVUH's Surgical Services/Anesthesiology Department, which is physically located in Ruby Memorial and a part of the business of WVUH through its operation of the hospital. The plaintiff alleges that his application for clinical privileges was submitted to WVUH's Medical Staff Affairs department and that his credentials were investigated by that department for a period of 90 days pursuant to WVUH's written Credentialing Policy. The credentialing process is overseen by WVUH's Vice President of Medical Staff Affairs. At the plaintiff's interview, Morris gave the plaintiff

a letter from WVUH's Vice President for Medical Staff Affairs. The letter notified the plaintiff that WVUH granted him temporary clinical privileges. WVUH's Board of Directors later granted the plaintiff clinical privileges for a period of two years.

As to control over termination, WVUH observes and evaluates the performance and clinical competence of CRNAs during the first year of their employment. WVUH may automatically terminate the privileges if a CRNA does not meet and fulfill his responsibilities. The plaintiff alleges that his appointment and reappointment were contingent upon attendance at continuing education programs, the outcome of periodic performance evaluations, compliance with Medical Staff bylaws, policies, and procedures, and the ongoing maintenance of professional liability insurance coverage. Morris allegedly prepared a resignation letter which resulted in the termination of the plaintiff's employment with WVUH.

The plaintiff contends that WVUH provided the scrub clothing bearing its name, a jacket, and a briefcase. WVUH provided the plaintiff with access to an automated pharmaceutical control and dispensing system and electronic passwords and access codes to its patient records, medication administration, and anesthesiology databases. Further, WVUH purportedly gave the plaintiff a hospital identification badge, access to employee parking, employee discounts in the building, an employee mailbox, and a copy of

WVUH's employee handbook.  WVUH also required the plaintiff to attend continuing education and weekly staff meetings.

The plaintiff alleges that the doctors in the Surgical Services/Anesthesiology Department who work in the hospital are members of WVUH's medical staff.  Morris controlled the plaintiff's work schedule and assignments were distributed by Morris and the anesthesiologists on WVUH's medical staff.  The plaintiff alleges that all narcotics and drugs used by the plaintiff were ordered by the physicians acting for WVUH, not by the plaintiff.  He states that Morris and Wilks evaluated his job performance pursuant to WVUH's Credentialing Policy.

The plaintiff does provide facts to allege that he is an employee rather than an independent contractor.  He alleges that he did not exercise professional independence in discharging his services, but instead was supervised and directed by doctors.  He states that the instrumentalities of his work were all provided by WVUH, which shares control of the Surgical Services/Anesthesiology Department with the other defendants.  He also alleges that his contract required 30 days written notice of cancellation.

These facts show that more discovery is needed on the plaintiff's employment status.  The plaintiff has sufficiently plead facts to show that he may be an employee or joint employee. Accordingly, WVUH's motion to dismiss is denied as to the plaintiff's employment status.

However, this Court must grant WVUH's motion to dismiss to the extent that the plaintiff contends that the defendants constitute an integrated enterprise.  The plaintiff does not allege that the defendants constitute an integrated enterprise in his amended complaint.  Therefore, WVUH's motion is granted in part.

3.  Count II

The remaining two counts of the plaintiff's amended complaint are alternative counts against WVUH.  Count II alleges that WVUH is liable for the alleged unlawful acts of Dewey Morris as a result of an actual agency relationship among the defendants.  WVUH believes Count II of the amended complaint should be dismissed because it believes that it is not vicariously liable to the plaintiff for the alleged acts of his supervisor via the claim of an actual agency relationship under the doctrine of respondeat superior because WVUH did not employ or control the supervisor and because WVUMC-UHA and WVU BOG are not the agents of WVUH.  WVUH states that the question of an agency relationship between West Virginia University and WVUH has been litigated previously and the West Virginia Supreme Court of Appeals has declared that no such relationship exists.

"An agency relationship has been implied to find joint employers for Title VII litigation purposes."  Equal Emp't Opportunity Comm'm v. The Upjohn Corp., 445 F. Supp 635, 639 (N.D. Ga. 1977).  The West Virginia Supreme Court of Appeals has held that WVUH is a separate legal entity from West Virginia University.  Queen v. W. Va. Univ. Hosps., 365 S.E.2d 375, 380 (W. Va. 1987).

In West Virginia, to determine whether an agency relationship exists, the facts of the particular case must be examined. Burless v. W. Va. Univ. Hosps., Inc., 601 S.E.2d 85, 91 (W. Va. 2004). Four general factors are considered in determining the existence of a master-servant relationship: "(1) Selection and engagement of the servant; (2) Payment of compensation; (3) Power of dismissal; and (4) Power of control." Id. The first three factors are not essential to the existence of the relationship, but the fourth factor is determinative. Id. In W. Va. Univ./Ruby Mem'l Hosp. v. W. Va. Human Rights Comm'n, 617 S.E.2d 524, 530 n.5 (W. Va. 2005), the Court found that an employee of WVUH could not be viewed as having acted as an agent for WVU where the "evidence in the record established that WVUH, not WVU, controlled the day-to-day activities of [the employee]." Id. In Burless, the Court examined a voluminous record and thoroughly considered each of the four factors "in light of the particular facts of [the] case and the evidence in the record" and concluded that West Virginia University resident physicians who treated patients at WVUH were not agents or employees of WVUH. Burless, 601 S.E.2d at 91.

The Supreme Court of Appeals has stated that "each case must be resolved on its own facts and ordinarily no one feature of the relationship is controlling." Id. (citing syl. pt. 1, Myers v. Workmen's Compensation Comm'r, 148 S.E.2d 664 (W. Va. 1966). This Court does not have a voluminous record to reference at this stage in the litigation. The plaintiff has alleged sufficient facts to

demonstrate the existence of an actual agency relationship to survive a motion to dismiss. The plaintiff alleges in his amended complaint that WVUH is responsible for the operation of clinical facilities at Ruby Memorial, exercises significant control over the operations of WVUMC-UHA and WVU BOG acting through WVU SOM with respect to the employment of CRNAs. The plaintiff states in his alternative count that the CRNAs are employed by WVUMC-UHA and WVU BOG for WVUH and are subject to WVUH's Credentialing Policy. The amended complaint also states that WVUH imposes its code of conduct and other employment policies on WVUMC-UHA and WVU BOG through their employees who act for WVUH in providing medical services to patients in Ruby Memorial.

WVUH contends that it is entitled to the affirmative defense expressed in <u>Farragher v. City of Boca Raton</u>, 524 U.S. 775 (1998), and <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742 (1998). In those cases, the Supreme Court held that:

> when no tangible employment action is taken, the employer may defeat vicarious liability for supervisor harassment by establishing, as an affirmative defense, both that "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and that "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."

<u>Penn. State Police v. Suders</u>, 542 U.S. 129, 145-46 (2004) (quoting <u>Burlington Indus.</u>, 524 U.S. at 765). In <u>Farragher</u> and <u>Burlington Industries</u>, the Supreme Court identified "a class of cases where, beyond question, more than the mere existence of the employment relation aids in commission of the harassment: when a supervisor

takes a tangible employment action against the subordinate."
Burlington Indus., 524 U.S. at 760. A tangible employment action
"constitutes a significant change in employment status, such as
hiring, firing, failing to promote, reassignment with significantly
different responsibilities, or a decision causing a significant
change in benefits." Id. at 761. The tangible employment action
is "an official act of the enterprise, a company act . . . the
means by which the supervisor brings the official power of the
enterprise to bear on subordinates." Id. at 762.

Here, the plaintiff alleges that Morris used his position as
a supervisor to the plaintiff's disadvantage. He alleges that
Morris's actions constituted an official company act, which
precipitated the plaintiff's decision to resign. The plaintiff has
alleged sufficient facts to preclude the use of the affirmative
defense by WVUH at this time.

Because the plaintiff has stated a claim that WVUH is liable
pursuant to an actual agency theory, the motion to dismiss Count II
is denied.

4.    Count III

In Count III, the plaintiff alleges that WVUH is liable for
the alleged unlawful acts of Dewey Morris under the doctrine of
ostensible or apparent authority. WVUH states that the plaintiff
cannot prevail on this theory because he knew that he and his
supervisor were employees of entities other than WVUH.

West Virginia courts recognize that:

> [o]ne who by his acts or conduct has permitted another to
> act apparently or ostensibly as his agent, to the injury
> of a third person who has dealt with the apparent or
> ostensible agent in good faith and in the exercise of
> reasonable prudence, is estopped to deny the agency
> relationship.

Burless, 601 S.E.2d at 92 (quoting syl. pt. 1, Gen. Elec. Credit Corp. v. Fields, 133 S.E.2d 780 (1963)).   In this case, the plaintiff has alleged sufficient facts to allege liability by apparent agency.   The plaintiff alleges in his amended complaint that WVUH held itself out to the plaintiff and the public as the apparent or ostensible employer of persons working at Ruby Memorial and that they had the apparent authority to control the actions of those workers.   The plaintiff alleges that Formal CRNAs told him that the position he was taking was with WVUH.   The plaintiff alleges that he believed that he was applying for a position with WVUH because of an envelope he received from WVUH containing documents to be completed and returned to WVUH in connection with the Credentialing Process.   Morris wore scrub clothing labeled with "WVUH" during the interview.   Morris had administrative access to WVUH's automated pharmaceutical control and dispensing system and entered the plaintiff as an approved user of the system.   Morris gave the plaintiff access to WVUH's electronic patient records system.   Morris also had a master key card, which gave him access to several rooms in Ruby Memorial.   The plaintiff's duties were performed in WVUH's Ruby Memorial.   The plaintiff alleges that he believed that the physicians giving him work assignments were employees of WVUH and the plaintiff alleges that he accepted the

instructions in the belief that his activities were being rendered on behalf of WVUH. Accordingly, the motion to dismiss Count III must be denied.

## IV. Conclusion

For the reasons stated above, West Virginia University Board of Governors' Motion to Dismiss (Document No. 12), West Virginia University Hospital, Inc's Motion to Dismiss (Document No. 14), and West Virginia University Medical Corporation d/b/a University Health Associates' Motion to Dismiss (Document No. 17) are DENIED AS MOOT. West Virginia University Board of Governors' Motion to Dismiss Amended Complaint (Document No. 41) is DENIED. West Virginia University Medical Corporation d/b/a University Health Associates' Motion to Dismiss Amended Complaint (Document No. 43) and West Virginia University Hospital, Inc.'s Motion to Dismiss Amended Complaint (Document No. 44) are GRANTED IN PART and DENIED IN PART. Finally, the plaintiff's Motion for Leave to Conduct Discovery Pursuant to Federal Rule of Civil Procedure 56(f) (Document No. 34) is DENIED AS MOOT.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit copies of this order to counsel of record herein.

DATED:     April 19, 2011


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE